## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE LOANDEPOT, INC. DERIVATIVE LITIGATION | Case No. 22-cv-320-CFC |

### STIPULATION AND [PROPOSED] ORDER OF DISMISSAL

WHEREAS, on March 11, 2022, Plaintiff Tuyet Vu filed a stockholder derivative action in this Court on behalf of nominal defendant loanDepot, Inc. ("loanDepot" or the "Company") against Defendants Anthony Hsieh, Patrick Flanagan, Nicole Carrillo, Andrew C. Dodson, John C. Dorman, Brian P. Golson, and Dawn Lepore (collectively, the "Individual Defendants," and together with loanDepot, the "Defendants"), captioned *Vu v. Hsieh, et al.*, Case No. 1:22-cv-00320-CFC (the "*Vu* Action");

WHEREAS, on March 25, 2022, Plaintiff Jocelyn Porter filed a stockholder derivative action in this Court on behalf of nominal defendant loanDepot against Defendants Anthony Hsieh, Patrick Flanagan, Nicole Carrillo, Andrew C. Dodson, John C. Dorman, Brian P. Golson, and Dawn Lepore, captioned *Porter v. Hsieh et al.*, Case No. 1:22-cv-00388-CFC (the "*Porter* Action");

WHEREAS, on April 5, 2022, this Court entered an order consolidating the *Vu* Action and the *Porter* Action (the "Derivative Action");

WHEREAS, the Derivative Action involves some of the same parties and factual allegations as a related federal securities class action filed on September 3, 2021, in the United States District Court for the Central District of California, captioned *LaFrano et al. v. loanDepot, Inc. et al.*, Case No. 8:21-cv-01449 (the "Securities Class Action");

WHEREAS, based upon the overlapping parties and factual allegations contained in the Derivative Action and the Securities Class Action, and to avoid the unnecessary expenditure of judicial resources, on April 12, 2023, the Parties moved for a temporary stay of prosecution of the Derivative Action until the resolution of the defendants' motion for summary judgment in the Securities Class Action;

WHEREAS, on April 13, 2023, this Court entered an Order staying the Derivative Action;

WHEREAS, on October 24, 2024, this Court entered a Stipulation and Order Staying Action, which noted that the parties reached an agreement in principle to settle the Derivative Action and intended to file a motion for approval of the forthcoming settlement in the United States District Court for the Central District of California (the "Reviewing Court");

WHEREAS, on February 11, 2025, the Parties executed a Stipulation and Agreement of Settlement (the "Derivative Action Settlement") of the following derivative actions, all putatively brought on behalf of loanDepot by current stockholders:

1. *In re loanDepot, Inc. Stockholder Derivative Litigation*, No. 2:21-cv-08173 (C.D. Cal.);

2. *In re loanDepot, Inc. Derivative Litigation*, No. 1:22-cv-00320 (D. Del.); and

3. *In re loanDepot, Inc. Derivative Litigation*, No. 2023-0613 (Del. Ch.).

WHEREAS, on May 2, 2025, the Reviewing Court granted preliminary approval of the proposed Derivative Action Settlement and approved the method of providing notice to loanDepot stockholders and the forms of notice and summary notice, and notice of the Derivative Action Settlement and its terms was accordingly provided to owners of loanDepot common stock;

WHEREAS, on September 26, 2025, the Reviewing Court held a final approval hearing, at which any interested stockholders were afforded the opportunity to be heard regarding the Derivative Action Settlement; and

WHEREAS, on September 29, 2025, the Reviewing Court entered a Final Judgment and Order approving the Derivative Action Settlement and finding that the notice provided to all stockholders was sufficient (attached hereto as Exhibit A);

NOW, THEREFORE, the Parties, by and through their undersigned counsel, and subject to the approval of the Court, hereby jointly stipulate as follows:

1.    Pursuant to the Parties' Derivative Action Settlement and Federal Rules of Civil Procedure 41(a)(1)(A)(ii) and 23.1(c), the above-captioned action shall be dismissed with prejudice; and

2.    Each party is to bear his, her, or its own costs.

Dated: October 6, 2025                      Respectfully submitted,

FARNAN LLP                                   ROSS ARONSTAM & MORITZ LLP

*/s/ Brian E. Farnan*                        */s/ R. Garrett Rice*
Brian E. Farnan (Bar No. 4089)               Bradley R. Aronstam (#5129)
Michael J. Farnan (Bar No. 5165)             R. Garrett Rice (#6242)
919 N. Market Street, 12th Floor             Hercules Building
Wilmington, DE 19801                         1313 North Market Street, Suite 1001
(302) 777-0300                               Wilmington, Delaware 19801
bfarnan@farnanlaw.com                        (302) 576-1600
mfarnan@farnanlaw.com                        baronstam@ramllp.com
                                             grice@ramllp.com
*Liaison Counsel for Plaintiffs*
                                             GIBSON, DUNN & CRUTCHER LLP
THE BROWN LAW FIRM, P.C.
Timothy Brown                                Craig Varnen
767 Third Avenue, Suite 2501                 333 South Grand Avenue
New York, NY 10017                           Los Angeles, California 90071-3197
(516) 922-5427                               (213) 229-7000
tbrown@thebrownlawfirm.net                   cvarnen@gibsondunn.com

THE ROSEN LAW FIRM, P.A.

3

Phillip Kim
275 Madison Avenue, 40th Floor
New York, NY 10016
(212) 686-1060
pkim@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

GIBSON, DUNN & CRUTCHER LLP

Michael Kahn
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
(415) 393-8200
mjkahn@gibsondunn.com

*Counsel for Defendants and Nominal
Defendant loanDepot*

SO ORDERED this _14th_ day of _October_, 2025.

_____

The Honorable Colm F. Connolly
United States District Chief Judge

4

# EXHIBIT A

Case 1:22-cv-00320-CFC    Document 13    Filed 10/14/25    Page 6 of 21 PageID #: 209
Case 2:21-cv-08173-JLS-JDE    Document 84    Filed 09/29/25    Page 1 of 12    Page ID
#:1102

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CASE NO. 2:21-cv-08173-JLS-JDE

IN RE LOANDEPOT, INC.
STOCKHOLDER DERIVATIVE
LITIGATION

**ORDER GRANTING FINAL
APPROVAL OF DERIVATIVE
SETTLEMENT (Doc. 79)**

1

Case 1:22-cv-00320-CFC   Document 13   Filed 10/14/25   Page 7 of 21 PageID #: 210
Case 2:21-cv-08173-JLS-JDE   Document 84   Filed 09/29/25   Page 2 of 12   Page ID
#:1103

Before the Court is an unopposed Motion for Final Approval of Derivative Settlement filed by Plaintiffs Aaron Taylor, Tanya Harry, Haydon Modglin, Troy Skinner, and Linda Johnson. (Mot., Doc. 79; Mem., Doc. 79-1; Notice of Non-Opp.; Doc. 80.) Having considered the papers and having held oral argument, the Court now GRANTS the Motion for Final Approval of Derivative Settlement for the reasons stated below.

## I.   BACKGROUND

### A. Procedural History

This is a consolidated shareholder derivative action brought against current and former officers and members of the Board of Directors of Defendant loanDepot Inc.[1] loanDepot is a retail mortgage lender incorporated in Delaware and headquartered in California. (Mem. at 10.) After nearly four years of litigation, the plaintiffs in this California Federal Court action—along with the plaintiffs in two similar derivative actions filed in the District of Delaware and in Delaware Chancery Court[2]—entered into a Stipulation and Agreement to Settle with loanDepot and the individual Defendants. (Stip. at 1.)

The complaints in these three derivative actions were filed beginning in October 2021. (Stip. at 8.) The complaints allege that the individual Defendants breached their fiduciary duties as directors and/or officers by causing loanDepot to issue false and misleading statements to investors and the government. (*Id.*) The plaintiffs in this action allege, for example, that the Registration Statement and Prospectus issued in connection with loanDepot's initial public offering ("IPO") "failed to disclose that: (1) its refinance originations had already declined substantially at the time of the IPO due to industry over-

---

[1] The names of these current and former officers and Board members are Anthony Hsieh, Patrick Flanagan, Nicole Carrillo, Andrew C. Dodson, John C. Dorman, Brian P. Golson, and Dawn Lepore. (Mem. at 8.) The Court refers to them collectively as the "individual Defendants."

[2] Tuyet Vu and Jocelyn Porter are the plaintiffs in the Delaware Federal Court action, *In re loanDepot, Inc. Deriv. Litig.*, Case No. 1:22-cv-00320 (D. Del.); Jonathan Armstrong and Hee Do Park are the plaintiffs in the Delaware Chancery Court action, *In re loanDepot, Inc. Deriv. Litig.*, No. 2023-0613 (Del. Ch.). (Stip. at 1–2, Doc. 72-3.)

Case 1:22-cv-00320-CFC    Document 13    Filed 10/14/25    Page 8 of 21 PageID #: 211
Case 2:21-cv-08173-JLS-JDE    Document 84    Filed 09/29/25    Page 3 of 12    Page ID
#:1104

capacity and increased competition; (2) its gain-on-sale margins had already declined substantially at the time of the IPO; (3) as a result, its revenue and growth would be negatively impacted; and (4) as a result of the foregoing, its positive statements about its business, operations, and prospects were materially misleading and/or lacked a reasonable basis." (Compl. ¶ 5, Doc. 1.) The complaints assert claims, *inter alia*, for breach of fiduciary duty, unjust enrichment, abuse of control, waste of corporate assets, and violations of section 10(b) of the Securities Exchange Act. (*Id.* ¶¶ 77–99; Mem. at 10–11.)

The Parties[3] engaged in extensive settlement negotiations before reaching the Settlement Agreement. On May 4, 2023, the Parties in this action and the Delaware Federal Court action participated in mediation before Jed Melnick of JAMS. (Mem. at 12.) Though no final resolution was reached at that mediation, the Parties continued to engage in settlement negotiations over the course of 2023 and 2024. (*Id.*) On October 7, 2024, the Parties participated in mediation before Robert Mediator of JAMS. (*Id.* at 12–13.) During that mediation, the Parties reached a Settlement Agreement. (*Id.*)

The Settlement Agreement provides that loanDepot's Board will adopt the corporate governance reforms set forth in Exhibit E to the Stipulation no later than 90 days from the effective date of the settlement, and will maintain those reforms for at least four years. (Stip. §§ 1.1, 1.2; Ex. E to Stip. ("Reforms").) "loanDepot acknowledges that the filing, pendency, and settlement of the [three derivative actions] was a significant factor in [its] decision to adopt, implement, and maintain the measures" set forth in Exhibit E. (Stip. § 1.3.) These reforms include loanDepot acting to (1) improve the Disclosure Committee by adopting a formal Disclosure Committee Charter and implementing compliance procedures to ensure that the company's disclosures are accurate and complete; (2) appoint a Chief Risk Officer; (3) create an Enterprise Risk Management Committee; (4) appoint a Chief Compliance Officer; (5) appoint a Chief Legal Officer; (6)

---

[3] As used throughout this Order, "Parties" refers to all of the parties involved in the three derivative actions subject to the Stipulation.

Case 1:22-cv-00320-CFC    Document 13    Filed 10/14/25    Page 9 of 21 PageID #: 212
Case 2:21-cv-08173-JLS-JDE    Document 84    Filed 09/29/25    Page 4 of 12    Page ID
#:1105

amend the Compensation Committee Charter to ensure that incentive compensation
considers an executive's legal and ethical compliance; (7) post its insider trading policy
and corporate governance policies on the company website; and (8) require annual training
for Board members on topics relevant to directors of publicly-traded companies such as
disclosures to stockholders, fiduciary duties, and compliance with law and regulation.
(Reforms.)  In addition, loanDepot has agreed not to underwrite its loan products to
prospective customers without "first reasonably determining that the prospective customer
can repay the loan product."  (*Id.*)  The Board represents that these reforms "are in the best
interest of [loanDepot] and its stockholders."  (Stip. § 1.3.)

The Settlement Agreement provides for a release of all derivative claims against
Defendants arising out of or related to any facts that were alleged, or that could have been
alleged, by Plaintiffs[4] or any current loanDepot shareholder on loanDepot's behalf in any
of the complaints filed in the derivative actions subject to the Stipulation.  (*Id.* § 5.1.)
Defendants agreed that "Plaintiffs' Counsel[5] are entitled to awards of reasonable attorneys'
fees and expenses for their roles in creating the substantial benefits provided for in the
[s]ettlement."  (*Id.* § 4.1.)  Defendants also agreed not to oppose an application for a
service award of up to $2,500 per Plaintiff, to be funded exclusively from the attorneys'
fees and expenses amount.  (*Id.* § 4.7.)  The Parties had not agreed on an appropriate
attorneys' fees and expenses amount at the time of the Stipulation.  (*Id.* § 4.2.)

On May 2, 2025, the Court granted preliminary approval of the Settlement
Agreement and ordered the Parties to file revised versions of their proposed Notices to
stockholders.  (Prelim. Approval Order at 10–11, Doc. 75.)  Defendants timely filed
amended proposed Notices, and the Court approved the form and method of stockholder
notice on May 19, 2025.  (Kahn Decl., Doc. 76; Amended Notice Order, Doc. 77.)

---

[4] "Plaintiffs" refers to all plaintiffs involved in the three derivative actions subject to the
Stipulation.
[5] "Plaintiffs' counsel" refers to counsel for all plaintiffs involved in the three derivative
actions.

Case 1:22-cv-00320-CFC   Document 13   Filed 10/14/25   Page 10 of 21 PageID #: 213
Case 2:21-cv-08173-JLS-JDE   Document 84   Filed 09/29/25   Page 5 of 12   Page ID
#:1106

## B. Notice and Response

Notice to shareholders took three forms: long-form Notice, Summary Notice, and Postcard Notice. (*See* Blow Decl. ¶ 4, Doc. 82-1.)  The Notice describes the terms of the settlement, the facts and considerations leading to the settlement, the procedure for filing objections, how to contact counsel to obtain additional information, and the date of the final settlement hearing. (Ex. 1 to Kahn Decl., Doc. 76-1.)  The Summary and Postcard Notice include the procedure for filing objections, how to contact counsel to obtain additional information, the date of the final settlement hearing, and a link to the settlement website, where stockholders can find the long-form Notice. (Ex. 3 to Kahn Decl., Doc 76-3; Ex. 5 to Kahn Decl., Doc. 76-5.)

Defendants retained a notice administrator, Epiq, which posted the Notice to a settlement website on May 30, 2025. (Blow Decl. ¶¶ 2, 17.)  The site had received 327 visitors as of September 18, 2025. (*Id.* ¶ 18.)  Epiq also published the Summary Notice in the May 26, 2025 publication of *Investor's Business Daily*. (*Id.* ¶ 5.)

Additionally, counsel for Defendants provided Epiq with a list of fifty stockholders and their contact information, and on May 30, 2025, Epiq mailed fifty Postcard Notices to those stockholders. (*Id.* ¶¶ 6, 11.)  Epiq sent additional Postcard Notices to 901 nominees, described as "banks, brokerage firms, institutions, and other third-party nominees" which may have purchased shares on behalf of beneficial owners. (*Id.* ¶ 11.)  Epiq subsequently received the names of 2,679 additional stockholders from nominees, and sent Postcard Notices to those stockholders. (*Id.* ¶ 13.)  Only one Postcard Notice was returned, which Epiq re-mailed to the stated forwarding address. (*Id.* ¶ 14.)  In total, 3,639 Postcard Notices were mailed. (*Id.* ¶ 16.)  Stockholders were directed to mail their objections to Plaintiffs' and Defendants' counsel by September 5, 2025. (Kahn Decl. ¶ 3–4; Ex. 1 to Kahn Decl.; Ex. 3 to Kahn Decl; Ex. 5 to Kahn Decl.)  No stockholders have objected. (*See* Fortunato Decl. ¶ 46, Doc. 79-2; Blow Decl. ¶ 19.)

Case 1:22-cv-00320-CFC    Document 13    Filed 10/14/25    Page 11 of 21 PageID #: 214
Case 2:21-cv-08173-JLS-JDE    Document 84    Filed 09/29/25    Page 6 of 12   Page ID
#:1107

### C. Attorneys' Fees and Costs

After the Court issued its Preliminary Approval Order, the Parties continued

negotiating the attorneys' fees and costs to be awarded to Plaintiffs' counsel. (Fortunato

Decl. ¶ 48.) On June 27, 2025, a mediator proposed that Plaintiffs' counsel be awarded

$625,000. (Ex. 1 to Fortunato Decl., Fee Agreement, Doc. 79-3.) The Parties accepted the

proposal and entered into an Agreement regarding attorneys' fees. (*Id.*)

The plaintiffs in this action now move for final approval of the derivative

settlement, including an attorneys' fees and costs award of $625,000 to Plaintiffs' counsel

and Service Awards of $2,500 to each of the nine Plaintiffs, to be paid out of the attorneys'

fees award. (*See* Mem. at 9.)

## II.    FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Legal Standard

Settlement of derivative actions is governed by Federal Rule of Civil Procedure

23.1, which states that a derivative action "may be settled, voluntarily dismissed, or

compromised only with the court's approval." Moreover, when approving the settlement

of a derivative action, "the court should apply the principles and procedures governing

settlements of class actions in general." Federal Judicial Center, *Manual for Complex

Litigation*, § 31.8 (4th ed. 2004). Approval of a settlement proceeds in two steps: "under

Ninth Circuit precedent, this Court must grant preliminary approval of a settlement,

including approval of the notice to stockholders and the proposed method of notice, before

having the final settlement hearing." *In re NVIDIA Corp. Derivative Litig.*, 2008 WL

5382544, at *2 (N.D. Cal. Dec. 22, 2008).

### B. Analysis

In its Preliminary Approval Order, the Court evaluated the fairness factors

identified by the Ninth Circuit as relevant to a determination as to whether the settlement is

fair, reasonable, and adequate under Rule 23. (*See* Prelim. Approval Order at 6–10.) The

Court determined that the following factors weigh in favor of approval: (1) the benefits

6

Case 1:22-cv-00320-CFC   Document 13   Filed 10/14/25   Page 12 of 21 PageID #: 215
Case 2:21-cv-08173-JLS-JDE   Document 84   Filed 09/29/25   Page 7 of 12   Page ID
#:1108

conferred by the settlement; (2) the costs and risks of further litigation; and (3) arms-length negotiations. (*Id.*) The Court sees no reason to depart from its previous conclusion as to these factors. The Court therefore incorporates its analysis in the Preliminary Approval Order into the instant Order.

However, at the time of preliminary approval, plaintiffs in this action had not yet provided evidence of shareholder reactions to the settlement. (*Id.* at 9); *see Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (stating that one of the factors informing a settlement's fairness is "the reaction of the Class Members to the proposed settlement"). The Court therefore ordered counsel to submit, before the final settlement hearing, "a sufficient number of declarations from shareholders discussing their reactions to the proposed settlement[.]" (Prelim. Approval Order at 9.)

Following preliminary approval, shareholders received notice of settlement via a long-form Notice posted to a settlement website, Summary Notice published in *Investor's Business Daily*, and mailed Postcard Notices, which were sent to 3,639 stockholders. (Blow Decl. ¶¶ 5, 16, 17.) Neither Plaintiffs' counsel nor the notice administrator received any objections to the settlement. (Fortunato Decl. ¶ 46; Blow Decl. ¶ 19.) Counsel now submit declarations from seven Plaintiffs in support of the Settlement Agreement. (*See* Mem. at 14; Fortunato Decl. ¶¶ 46–47.) Each of the seven Plaintiffs who submitted a declaration agrees that "the proposed settlement would confer substantial benefits" upon loanDepot and requests that the settlement be approved. (Taylor Decl. ¶¶ 8–9, Doc 79-6; Harry Decl. ¶¶ 8–9, Doc. 79-7; Modglin Decl. ¶¶ 8–9, Doc. 79-8; Skinner Decl. ¶¶ 8–9, Doc. 79-9; Vu Decl. ¶¶ 6–7, Doc. 79-10; Porter Decl. ¶¶ 6–7, Doc. 79-11; Armstrong Decl. ¶¶ 7–8, Doc. 79-12.) The Court finds that, because Defendants gave shareholders adequate notice and no shareholders objected, the seven declarations in support of the settlement sufficiently demonstrate that the Settlement Agreement would be beneficial to shareholders.

Case 1:22-cv-00320-CFC    Document 13    Filed 10/14/25    Page 13 of 21 PageID #: 216
Case 2:21-cv-08173-JLS-JDE    Document 84    Filed 09/29/25    Page 8 of 12    Page ID
#:1109

Accordingly, considering all the factors together, the Court concludes that the settlement is fair, reasonable, and adequate.

## III.   ATTORNEYS' FEES AND COSTS

Plaintiffs also seek an award of $625,000 in attorneys' fees and expenses to Plaintiffs' counsel. (Mem. at 24.) The Parties had not yet agreed upon an amount to be awarded to Plaintiffs' counsel at the time of preliminary approval, but on June 27, 2025, the Parties mutually accepted a mediator's proposal for an award of $625,000 in attorneys' fees. (Fortunato Decl. ¶ 26; Fee Agreement.) Defendants therefore do not oppose the amount requested. (Fortunato Decl. ¶ 26.)

### A. Legal Standard

Rule 23 permits a court to award "reasonable attorneys' fees ... that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods.*, 654 F.3d 935, 941 (9th Cir. 2011). The Supreme Court has held that where there is a "substantial benefit" to a corporation from a derivative suit, an award of counsel fees is justified. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970). The Ninth Circuit has identified factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Id.* at 1050.

### B. Results Achieved

Plaintiffs secured a settlement setting forth corporate governance reforms that loanDepot has agreed to implement and maintain for a period of at least four years. (Stip.; Reforms.) The Preliminary Approval Order noted, and Plaintiffs in their declarations

8

Case 1:22-cv-00320-CFC    Document 13    Filed 10/14/25    Page 14 of 21 PageID #: 217
Case 2:21-cv-08173-JLS-JDE    Document 84    Filed 09/29/25    Page 9 of 12   Page ID
#:1110

agree, that these reforms strengthen loanDepot's overall corporate governance and internal controls, thereby reducing the probability of future acts of corporate misconduct.  (Prelim. Approval Order at 7; *see, e.g.*, Taylor Decl. ¶ 8); *see Moore v. Verb Tech. Co., Inc.*, 2021 WL 11732976, at *5 (C.D. Cal. Mar. 1, 2021) (concluding that derivative settlement requiring corporate governance measures "substantially benefit[ted]" where the reforms provided "rigorous monitoring mechanisms to ensure that the [corporation]'s disclosures about its business, risk factors, and finances are not misleading and adhere to applicable law").  The lack of shareholder objections further points to the strength of these reforms. (*See* Mem. at 23.)  Plaintiffs' success in securing these reforms is underscored by the "notoriously difficult and unpredictable" nature of derivative actions.  *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *2.  The Court therefore finds that this factor weighs in favor of finding the requested fee award reasonable.

### C.  Risk of Litigation

Derivative actions are "rarely successful" and therefore carry inherent risk.  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  The Preliminary Approval Order detailed several hurdles Plaintiffs would face if this litigation were to continue, and the Court reincorporates that analysis here.  (Prelim. Approval Order at 7–8.)  This factor weighs in favor of granting the requested fee award.

### D.  Skill Required and Quality of Work

Plaintiffs' counsel "are made up of law firms that specialize in stockholder litigation." (Fortunato Decl. ¶ 52.)  Each of the firms representing Plaintiffs has provided evidence of its experience litigating derivative actions to demonstrate the quality of its work. (Ex. 2 to Fortunato Decl., Doc. 79-4; Ex. 1 to McKenna Decl., Doc. 79-13; Ex. 2 to Hernandez Decl., Doc. 79-14; Ex. 1 to Lifshitz Decl., Doc. 79-15; Ex. 1 to Holleman Decl., Doc. 79-16; Ex. 1 to Brown Decl., Doc. 79-17, Ex. 2 to Sachs-Michaels Decl., Doc 79-18; Ex. 1 to Stone Decl., Doc. 79-19.)  Moreover, the favorable settlement achieved by Plaintiffs' counsel in this "notoriously difficult" derivative action speaks to their skills.  *In*

9

Case 1:22-cv-00320-CFC   Document 13   Filed 10/14/25   Page 15 of 21 PageID #: 218
Case 2:21-cv-08173-JLS-JDE   Document 84   Filed 09/29/25   Page 10 of 12   Page ID
#:1111

*re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *2; *see Defrees v. Kirkland*, 2018 WL 11365544, at *5 (C.D. Cal. July 26, 2018) (Staton, J.) (finding that "the quality of Class Counsel's work is evidenced by the favorable settlement achieved"). This factor therefore weighs in favor of finding the requested fee reasonable.

### E. Contingent Nature of the Fee

Plaintiffs' counsel performed their work on a fully contingent basis and have collectively invested over 1,500 hours in the litigation since it began in 2021. (Fortunato Decl. ¶ 55.) Counsel therefore devoted significant time and expenses to this action, without any reimbursement for expenses thus far or guarantee of compensation for their work. (*Id.* ¶ 52.) "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 457 (E.D. Cal. 2013) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). This factor weighs in favor of finding the requested fee award reasonable.

### F. Lodestar Calculation

Plaintiffs' counsel assert they have collectively spent 1,535.80 hours litigating this action. (Fortunato Decl. ¶ 55.) Using hourly rates ranging from $825 to $1403 for partners, $425 to $695 for associates, and $200 to $425 for paralegals, Plaintiffs' counsel calculated a lodestar of $1,319,402.40. (*See* Fortunato Decl.; McKenna Decl.; Hernandez Decl.; Lifshitz Decl.; Holleman Decl.; Brown Decl.; Sachs-Michaels Decl.; Stone Decl.) Thus, an award of $625,000 less out-of-pocket expenses and Plaintiffs' service awards will result in a negative multiplier of 0.44. (*See* Fortunato Decl. ¶ 56.) The negative multiplier indicates that the requested fee award is reasonable. *See Defrees*, 2018 WL 11365544, at *5 (finding that a negative multiplier of 0.26 "weighs heavily in favor of finding the fee request reasonable").

Case 1:22-cv-00320-CFC    Document 13    Filed 10/14/25    Page 16 of 21 PageID #: 219
Case 2:21-cv-08173-JLS-JDE    Document 84    Filed 09/29/25    Page 11 of 12   Page ID
#:1112

## IV.    SERVICE AWARDS

Plaintiffs also seek a $2,500 service award for each of the nine Plaintiffs, to be paid from the attorneys' fee award. (Mem. at 28–29.) Incentive awards are "discretionary ... and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)). "An incentive payment to come from the attorneys' fees awarded to plaintiff's counsel need not be subject to intensive scrutiny, as the interests of the corporation, the public, and the defendants are not directly affected." *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002)

Plaintiffs in this case regularly conferred with counsel about the progress and strategy of the case and reviewed various documents and case filings, including the Settlement Agreement. (Taylor Decl.; Harry Decl.; Modglin Decl.; Skinner Decl.; Vu Decl.; Porter Decl.; Armstrong Decl.) Their efforts have resulted in a settlement that will impose reforms to loanDepot's benefit. The Court therefore finds that a $2,500 award to each Plaintiff is reasonable. *See Ebarle v. Lifelock, Inc.*, 2016 WL 5076203, at *12 (N.D. Cal. Sept. 20, 2016) ("Many courts in the Ninth Circuit have held that a $5,000 incentive award is 'presumptively reasonable.'") (collecting cases).

## V.    CONCLUSION

The Court finds the settlement to be fair, adequate, and reasonable, and accordingly GRANTS final approval of the settlement, including attorneys' fees, costs, and service payments. The Court awards Plaintiffs' counsel $625,000 in attorneys' fees and costs. The Court also awards to each Plaintiff a service payment of $2,500, to be paid out of the award for attorneys' fees and costs.

The concurrently filed proposed judgment shall be entered forthwith.

Case 1:22-cv-00320-CFC    Document 13    Filed 10/14/25    Page 17 of 21 PageID #: 220
Case 2:21-cv-08173-JLS-JDE    Document 84    Filed 09/29/25    Page 12 of 12   Page ID
#:1113

DATED:  September 29, 2025

HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE

# JS-6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| In Re: Loandepot, Inc. Stockholder Derivative Litigation | Case No. 2:21-cv-08173-JLS-JDE |
|---|---|
| | **JUDGMENT** |

Case 1:22-cv-00320-CFC    Document 13    Filed 10/14/25    Page 19 of 21 PageID #: 222
Case 2:21-cv-08173-JLS-JDE    Document 85    Filed 09/29/25    Page 2 of 4   Page ID
#:1115

1  Pursuant to the Court's Order Granting Plaintiffs' Motion for Final Settlement Approval

2  (Doc. 84), IT IS ADJUDGED that:

3      1.    Unless otherwise defined herein, all defined terms shall have the meanings as set

4  forth in the Stipulation. (Doc. 72-3.)

5      2.    The Notice of Pendency and Proposed Settlement of Derivative Action (the

6  "Notice") has been disseminated to loanDepot's stockholders pursuant to and in the manner

7  directed by the Preliminary Approval Order, proof of dissemination of the notice by mailing,

8  posting, and publication has been filed with the Court, and full opportunity to be heard has been

9  offered to all parties to the Action and to loanDepot's current stockholders. The form and manner

10  of notice is hereby determined to have been the best notice practicable under the circumstances

11  and to have been given in full compliance with the requirements of Rule 23.1 of the Federal Rules

12  of Civil Procedure, due process, and all other applicable laws, and it is further determined that

13  loanDepot and loanDepot's current stockholders are bound by the Judgment herein.

14      3.    The Stipulation and the terms of the Settlement as described in the Stipulation and

15  the Notice are found to be fair, reasonable, adequate, and in the best interests of loanDepot and

16  its stockholders, and are hereby approved pursuant to Rule 23.1 of the Federal Rules of Civil

17  Procedure. The Parties are hereby authorized and directed to comply with and to consummate

18  the Settlement in accordance with the terms and provisions set forth in the Stipulation, and the

19  Clerk of the Court is directed to enter and docket this Judgment in the Action.

20      4.    The Court hereby approves attorneys' fees and expenses in the amount of $625,000

21  and directs payment to Plaintiffs' Counsel in accordance with the terms of the Stipulation.

22      5.    This Judgment shall not constitute any evidence or admission by any Party that any

23  acts of wrongdoing have or have not been committed by any of the Parties and should not be

24  deemed to create any inference that there is or is not any liability for any Party.

25      6.    The Action is hereby dismissed with prejudice on the merits. Except as provided

26  herein, each Party shall bear its own costs incurred in connection with the Action.

27

28

Case 1:22-cv-00320-CFC    Document 13    Filed 10/14/25    Page 20 of 21 PageID #: 223
Case 2:21-cv-08173-JLS-JDE    Document 85    Filed 09/29/25    Page 3 of 4   Page ID
#:1116

7.      The Released Claims are hereby completely, fully, finally, absolutely, and forever discharged, dismissed with prejudice, settled, enjoined, released, relinquished, and compromised. "Released Claims" means the Released Defendant Claims and the Released Stockholder Claims.

    a.  "Released Stockholder Claims" means any and all claims, rights, demands, obligations, controversies, debts, disputes, damages, losses, actions, causes of action, sums of money due, judgments, suits, amounts, matters, issues, liabilities, and charges of any kind or nature whatsoever (including, but not limited to, any claims for interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, amounts, or liabilities whatsoever), and claims for relief of every nature and description whatsoever, whether in law or equity, including both known claims and Unknown Claims, suspected or unsuspected, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, whether arising under federal or state statutory or common law, or any other law, rule, or regulation, whether foreign or domestic, that loanDepot, Plaintiffs derivatively on behalf of loanDepot, or any loanDepot stockholder derivatively on behalf of loanDepot could have asserted in any court, tribunal, forum, or proceeding, arising out of, relating to, or based upon the facts, allegations, events, disclosures, non-disclosures, occurrences, representations, statements, matters, transactions, conduct, actions, failures to act, omissions, or circumstances that were alleged or referred to in any of the complaints filed in the Actions; provided, however, that the Released Stockholder Claims shall not include (1) any claims relating to the enforcement of the Settlement or the Stipulation, or (2) any claims that arise out of or are based upon any conduct of the Released Defendant Persons after the Effective Date.

    b.  "Released Defendant Claims" means any and all claims, rights, demands, obligations, controversies, debts, damages, losses, causes of action, and

3

Case 1:22-cv-00320-CFC    Document 13    Filed 10/14/25    Page 21 of 21 PageID #: 224
Case 2:21-cv-08173-JLS-JDE    Document 85    Filed 09/29/25    Page 4 of 4    Page ID
#:1117

1          liabilities of any kind or nature whatsoever, whether in law or equity, including

2          both known claims and Unknown Claims, suspected or unsuspected, accrued or

3          unaccrued, that Defendants could have asserted against the Released

4          Stockholder Persons, arising out of the institution, prosecution, or settlement of

5          the claims asserted against Defendants in the Actions, in any forum that arise

6          out of, relate to, or are based upon, any of the allegations, transactions, facts,

7          matters, events, disclosures, non-disclosures, occurrences, representations,

8          statements, acts or omissions, alleged or referred to in any of the complaints

9          filed in the Actions; provided, however, that the Released Defendant Claims

10          shall not include (1) any claims relating to the enforcement of the Settlement or

11          the Stipulation, (2) any claims by the Defendants relating to insurance coverage

12          or the right to indemnification, or (3) any claims that arise out of or are based

13          upon any conduct of the Released Stockholder Persons after the Effective Date.

14      8.      Without affecting the finality of this Judgment in any way, and subject to the terms

15 of the Stipulation of Settlement, this Court hereby retains continuing jurisdiction over:

16 (a) implementation of this Settlement; and (b) all Parties and the Parties' counsel hereto for the

17 sole purpose of construing, enforcing, and administering the Stipulation and this Judgment.

18      9.      There is no reason for delay in the entry of this Judgment and immediate entry by

19 the Clerk of the Court is expressly directed by the Court.

20      IT IS SO ORDERED.

21

22 DATED: September 29, 2025

23                            HON. JOSEPHINE L. STATON

                            UNITED STATES DISTRICT JUDGE

24

25

26

27

28                          4